1   SPIRO MOSS LLP
2   DENNIS F. MOSS (SBN 77512)
    email: dennisfmoss@yahoo.com
3   11377 W. Olympic Blvd, Fifth Floor
4   Los Angeles, CA 90064-1683
    Telephone: (310) 235-2468
5   Facsimile: (310) 235-2456

6
    Attorneys for Plaintiff Benjamin Granados
7

8

9                    **UNITED STATES DISTRICT COURT**

10
                     **CENTRAL DISTRICT OF CALIFORNIA**
11

12
    BENJAMIN GRANADOS,              Case No. CV 09-07329 DMG
13  individually and on behalf of others
14  similarly situated,            [CLASS ACTION]
                    Plaintiff,
15  vs.                            **MEMORANDUM OF LAW IN**
                                   **SUPPORT OF PLAINTIFF'S MOTION**
16                                 **FOR PRELIMINARY APPROVAL OF**
    BIMBO BAKERIES USA, INC.,      **CLASS AND COLLECTIVE ACTION**
17  and DOES 1 through 10,         **SETTLEMENT AND SETTING FINAL**
18                                 **FAIRNESS HEARING**
                    Defendants.
19
                                   [Notice of Motion; Declaration of Dennis F.
20                                 Moss; Stipulation of Settlement (and all
21                                 exhibits thereto); and [Proposed] Order filed
                                   concurrently herewith]
22
23                                 Date:    December 13, 2010
24                                 Time:    9:30 a.m.
                                   Judge:   Hon. Dolly M. Gee
25                                 Crtrm:   7

26

27

28

# **TABLE OF CONTENTS**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.     Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   SUMMARY OF SETTLEMENT TERMS . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.    THE TWO-STEP APPROVAL PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.     Plaintiff's Claims Merit Class Action Treatment . . . . . . . . . . . . . . . 7

        1.     Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.     Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        3.     Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        4.     Adequate Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        5.     Predominance of Common Questions . . . . . . . . . . . . . . . . . . 9

        6.     Superiority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.     The Settlement is Fair, Reasonable and Adequate . . . . . . . . . . . . . . 12

        1.     Benefits of Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2.     Monetary Terms are Fair and Reasonable . . . . . . . . . . . . . . . 15

        3.     Attorneys' Fees and Expenses Are Fair And Reasonable . . . 16

            a.     Plaintiff's Counsel to Seek No More Than

                  $275,000 in Fees and No More Than $8,000

                  In Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            b.     Lodestar Method Not Required and Unnecessary . . . . 16

        4.     The Service Award (Enhancement) to Plaintiff Is Fair &

            Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        5.     The Class Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.     THE COURT SHOULD SCHEDULE A FAIRNESS HEARING . . . . . . . 18

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1

## TABLE OF AUTHORITIES

2

3  Acosta v. Trans Union LLC
       243 F.R.D. 377 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
4
   Amchem Prods. Inc. v. Woodward
5      521 U.S. 591, 117 S. Ct. 2231 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6  Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee
       616 F.2d 305 (6th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
7
   Brinker Restaurant Corp. v. Superior Court
8      165 Cal. App. 4th 25, 80 Cal. Rptr. 3d 781 (2008) . . . . . . . . . . . . . . . . . . 14

9  Brinkley v. Public Storage, Inc.
       167 Cal. App. 4th 1278, 84 Cal. Rptr. 3d 873 (2008) . . . . . . . . . . . . . . . 14
10
   Brown v. Federal Express Corp.
11     2008 WL 906517 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

12 Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.
       917 F.2d 1171 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
13
   Culinary/Bartenders Trust Fund
14     244 F.3d at 1163 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15 Eisen v. Carlisle & Jacquelin
       (1974) 417 U.S. 156, 94 S. Ct. 2140 (1974) . . . . . . . . . . . . . . . . . . . . . . . 7
16
   Elkins v. Equitable Life Ins. of Iowa, No. 96-296-Civ-T-17B
17     1998 WL 133747, (M.D. Fla. Jan. 27, 1998) . . . . . . . . . . . . . . . . . . . . . . 11

18 Felzer v. Andreas
       134 F.3d 873 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
19
   Hammon v. Barry
20     752 F.Supp 1087 (D.D.C. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21 Hanlon v. Chrysler Corp.
       150 F.3d 1011(9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 10
22
   Ingram v. The Coca-Cola Co.
23     200 F.R.D. 685 (N.D. Ga. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

24 In re Chicken Antitrust Litig.
       560 F.Supp. 957 (N.D. Ga.. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
25
   In re Immune Response Sec. Litig.
26     497 F.Supp.2d 1166 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

27 Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,
   Inc.
28     244 F.3d 1152 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Linney v. Cellular Alaska P'ship, No. C-96-3008 DLJ et al.
    1997 WL 450064 (N.D. Cal. July 18, 1997) . . . . . . . . . . . . . . . . . . . . . . 13

Mars Steel Corp. v. Cont'l Ill. Nat'l Bank and Trust Co. of Chi.
    834 F.2d 677 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Martin v. FedEx Ground Package System, Inc., No. C 06-6883 VRW
    2008 WL 5478576, (N.D. Cal. Dec 31, 2008) . . . . . . . . . . . . . . . . . . . . . 14

Mullane v. Central Hanover Bank & Trust Co.
    339 U.S. 306, 70 S. Ct. 652 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Officers for Justice v. Civil Service Comm'n of City and County of S.F.
    688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Paul, Johnson, Alston & Hunt v. Graulty
    886 F.2d 268 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Priddy v. Edelman
    883 F.2d 438 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Silber v. Mabon
    18 F.3d 1449 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Six Mexican Workers v. Arizona Citrus Growers
    904 F.2d 1301 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n
    79 F.R.D. 571 (E.D. Pa. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Staton v. Boeing Co.
    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

Steinberg v. Carey
    470 F.Supp. 471 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Strube v. American Equity Inv. Life Ins. Co.
    226 F.R.D. 688 (M.D. Fla. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Valentino v. Carter-Wallace
    97 F.3d 1227 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Van Bronkhorst v. Safeco Corp.
    529 F.2d 943 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Van Vranken v. Atl. Richfield Co.
    901 F. Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Vizcaino v. Microsoft Corp.
    290 F.3d 1043 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

White v. Starbucks Corp.
    497 F. Supp. 2d 1080 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Zinser v. Accufix Research Institute, Inc.
    253 F.3d 1188 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATUTES**

Business and Professions Code

Section 17200 ........................................... 2, 8

Labor Code

Section 226 ............................................ 8
Section 226.4 .......................................... 10
Section 226.7 .......................................... 8
Section 512 ............................................ 8
Section 1194 ........................................... 8
Section 1194.2 ......................................... 8
Section 1197 ........................................... 8

**FEDERAL RULES**

Federal Rules of Civil Procedure

Rule 23(a) ............................................. 7
Rule 23(a)(1) .......................................... 7
Rule 23(a)(2) .......................................... 8
Rule 23(a)(3) .......................................... 8
Rule 23(a)(4) .......................................... 9
Rule 23(b)(3) ................................... 7, 10, 11, 17
Rule 23(b)(3)(A)-(C) ................................ 10, 11
Rule 23(b)(3)(D) ....................................... 10
Rule 23(c)(2)(B) ....................................... 17
Rule 23(e) ....................................... 1, 7, 12, 13
Rule 23(e)(C)(1) ....................................... 7
Rule 23(e)(C)(4) ....................................... 7

**FEDERAL STATUTES**

29 U.S.C. § 201 ........................................ 1

**OTHER AUTHORITIES**

Manual for Complex Litigation Second § 30.44 (1985) .................... 6
Manual for Complex Litigation Second §1.46(West 1977) .................. 7
Newberg on Class Actions §11.51 ................................... 13

**MEMORANDUM OF LAW**

## I.    INTRODUCTION

Plaintiff Benjamin Granados ("Plaintiff") brought a class and collective action against Defendant Bimbo Bakeries USA, INC. ("BBUSA" or "Defendant") alleging violations of certain California wage and hour and wage payment laws. Following a substantial informal exchange of information, extensive research, and a day-long mediation before experienced wage/hour class action mediator Mark Rudy, the parties reached agreement on the principal terms of settlement. Thereafter, they negotiated a formal Agreement. Plaintiff now moves under Rule 23(e) of the Federal Rules of Civil Procedure for preliminary approval of the settlement, and for certification of the Class for purposes of settlement, on the terms and conditions set forth in the Joint Stipulation of Class Settlement and Release (the "Settlement") attached as Exhibit A to the Declaration of Dennis F. Moss ("Moss Decl."), counsel for Plaintiff. (Moss Decl., para. 4, Ex. A.)  Capitalized terms used below have the same definitions provided in the Settlement.

BBUSA does not oppose this Motion.

## II.    BACKGROUND

On October 8, 2009, Plaintiff Benjamin Granados commenced the Action on behalf of himself and all other individuals allegedly similarly situated to him (the "Class").  On March 26, 2010, Plaintiff filed a First Amended Complaint.  Pursuant to the Settlement, Plaintiff has filed herewith a Second Amended Complaint. (Moss Decl., Par. 2)

In the Action, Plaintiff alleges that BBUSA did not properly round employees' time, or properly compensate employees for time spent donning and doffing work clothing in accordance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and California wage-and-hour laws and, on that basis, allegedly failed to pay Plaintiff and the Participating Class Members overtime and minimum wages owed to them, timely pay all wages due, or provide correctly

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

1

1   itemized wage statements.  Plaintiff also alleged that BBUSA's rounding practices,
2   at times, resulted in violations of California's meal and rest break requirements.
3   With regard to these matters, Plaintiff also alleged that BBUSA engaged in unfair
4   competition in violation of California Business and Professions Code § 17200 *et*
5   *seq.*

6          On April 8, 2010, BBUSA answered the First Amended Complaint in the
7   Action.  BBUSA denied Plaintiff's material allegations; maintained that the Court
8   should not certify the class and collective actions proposed by Plaintiff, that
9   Plaintiff and the Class were properly paid all wages due under the FLSA and
10  California wage-and-hour laws, that BBUSA complied with legal requirements as
11  to the timing of payment of wages and the form of wage statements, and that
12  BBUSA bore no liability to Plaintiff and the proposed Class; and raised other
13  defenses.  (Dec. of Moss, Par. 3)

14         In the course of litigating the Action, BBUSA has produced substantial data
15  regarding BBUSA's time and pay records, as well as data regarding the Class
16  Members and their Compensable Work Weeks in the Class Period.  Plaintiff also
17  obtained relevant Company policies and information from Collective Bargaining
18  Agreements.  (Moss Decl., Pars. 4-5)

19         On August 19, 2010, the Parties participated in good-faith, arms-length
20  negotiations presided over by experienced wage/hour class action mediator Mark
21  Rudy, Esq.  Based on those negotiations, the Parties agreed to settle the Action and
22  to release all claims covered by this Settlement.  (Moss Decl., Par. 5)

23         Class Counsel conducted a thorough investigation into the facts of the
24  Action, and engaged in comprehensive research on all aspects of the law, including,
25  but not limited to, state and federal law related to rounding, donning and doffing,
26  *de minimis* arguments, what constitutes compensable "work" under both Federal
27  and State law, Rule 23 class certification, as well as collective action certification
28  under the FLSA.  Based on the information and documents exchanged between the

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

2

1  Parties, their own independent investigation and evaluation of the law and facts,

2  Class Counsel are of the opinion that the Settlement is fair, reasonable, and

3  adequate and is in the best interest of the Class in light of all known facts and

4  circumstances, including the risk of significant delay, defenses asserted by BBUSA

5  as to both class and collective action certification and the merits of the claims, and

6  potential appellate issues.  (Moss Decl., Pars. 7, 11)

7       The settlement contemplates Plaintiff sending a letter to the California

8  Workforce Development Agency (the "LWDA") asserting violations of the

9  California *Labor Code* Private Attorneys General Act ("PAGA") based upon the

10  *Labor Code* violations alleged in the Complaint.  (Moss Decl., Par. 2)

11       **A.     Factual Background**

12       Plaintiff worked for Defendant at a bakery in Los Angeles County,

13  California, within the three-year period preceding the filing of the Complaint.

14  (Dec. of Moss, Par. 2)  At all times relevant to this action, Defendant has operated,

15  and continues to operate locations in various parts of California, where Plaintiff and

16  Class Members work and/or worked.  Many of the Class Members are unionized.

17  There are approximately 2214 Class Members.  (Moss Decl., Par. 2)

18       Defendant utilizes - and has utilized - several time-keeping and payroll

19  systems.  Plaintiff contends (and Defendant denies) that these systems and

20  Defendant's policies rounded time so that Class Members, over time, were

21  underpaid for their work.  Plaintiff contends that employees clocked in for work

22  before their scheduled start time much more often than after their scheduled start

23  time, and clocked out more often than not after their shifts were over, rather than

24  before their shifts ended.  As a consequence, Plaintiff contends that rounding of

25  time worked to the disadvantage of the Class Members more often than not.

26  Plaintiff also contends similar consequences occurred in connection with clock-outs

27  and clock-ins for meal breaks.  Additionally, Plaintiff contends that Defendant had

28  "donning and doffing" practices at times relevant hereto that allegedly resulted in

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

3

1   non-payment of wages that should have been paid.  (Moss Decl., Par. 4)  BBUSA

2   denies all of these contentions by Plaintiff and denies that it violated federal and

3   state law with respect to rounding or donning and doffing.

4   **III.    SUMMARY OF SETTLEMENT TERMS**

5         The full terms of the settlement are set forth in the separately filed

6   Settlement.  The primary material terms are as follows:

7         i.    The Class is all persons classified as non-exempt who were on

8               the payroll of BBUSA for at least one day during the period

9               beginning on October 8, 2005 and ending on the date of the

10              Preliminary Approval Order or January 1, 2011, whichever is

11              sooner, in a position that was subject to time rounding by

12              BBUSA in the State of California.   (Settlement, Par. II F, H and

13              J.)

14        ii.   Defendant will pay up to $1,100,000 (the "Settlement

15              Payment").  (Ex. A, para. II W.)

16        iii.  The Settlement Payment includes administrative charges by the

17              Claims Administrator, the service award to Plaintiff, Class

18              Counsel's expenses and fees, the PAGA Penalty Payment, and

19              Class Member payments.  (Settlement, Par. XIII A.)

20        iv.   Class Counsel will not seek an amount greater than 25% of the

21              "Settlement Payment" in terms of attorneys' fees, or an amount

22              greater than $8,000 in costs.  (Settlement, Par. X B.)

23        v.    Class members who timely file Claim Forms will receive their

24              pro-rata shares of the Net Qualified Settlement Fund ("Net

25              QSF").  The Net QSF will equal the Settlement Payment of

26              $1,100,000, less the Class Representative Payment, the Class

27              Counsel's Attorney's Fees and Costs Payment, and the

28              Settlement Administrator's reasonable fees and expenses

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

4

(Settlement, Par. XIV A2.a.)  A Claimant's share will be based on the product of the Net QSF times the percentage of the Claimant's number of Compensable Work Weeks divided by the total of the Compensable Work Weeks attributable to all Class Members.  For instance, if a Claimant is credited with 100 Compensable Work Weeks, and the entire Class (Claimants and non-Claimants) worked 100,000 work weeks during the relevant time period, then that Claimant would be entitled to 0.1% of the Net QSF.  (Settlement, Par. XIV A2.)

vi.   If less than 40% of the Net QSF is claimed, Claimant's shares will be increased on a pro rata basis, so that at least 40% of the Net QSF is distributed to Claimants.  (Settlement, Par. XIV D4.)

vii.   The PAGA Penalty Payment amount shall be $10,000, 75% of which is paid to the LWDA, and 25% of which is paid to the QSF.

viii.   Subject to the Court's approval, the Claims Administrator is to pay Plaintiff an enhancement/service award payment of $5,000 from the Net QSF.  (Settlement, Par. A XB.)

ix.   Defendant is to pay the Claims Administrator for administration expenses, which expenses are currently estimated at $32,000.00.

x.   Pursuant to the Settlement Agreement, Plaintiff is to file a Second Amended Complaint (SAC), which Plaintiff will do concurrently with the filing of this Motion.  The SAC adds claims for penalties payable to the LWDA under PAGA, and claims related to donning and doffing.  These claims were investigated before the mediation, and were negotiated and settled at the mediation.  (Dec. of Moss, Par. 2)

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

5

## IV.   THE TWO-STEP APPROVAL PROCESS

The law favors settlement, particularly in class actions and other complex cases, where substantial resources can be conserved by avoiding the time, cost, and the rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).   These concerns apply with particular force in a case such as this, where allegedly unlawful practices are alleged to affect at least two thousand employees, but in relatively small amounts.

Any class-wide settlement of class litigation must be reviewed and approved by the court.  This is done in two steps:  (1) an early (preliminary) review by the court, and (2) a final review after notice has been distributed to the class for their comment or objections.  The *Manual for Complex Litigation Second* states at § 30.44 (1985):

> A two-step process is followed when considering class settlements …
> if the proposed settlement appears to be the product of serious,
> informed, non-collusive negotiations, has no obvious deficiencies,
> does not improperly grant preferential treatment to class
> representatives or segments of the class, and falls within the range of
> possible approval, then the court should direct that notice be given to
> the class members of a formal fairness hearing, at which evidence may
> be presented in support of and in opposition to the settlement.

When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'  This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

6

1  fairness hearing." *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616

2  F.2d 305, 314 (6th Cir. 1980) (quoting Manual for Complex Litigation s 1.46, at

3  53-55 (West 1977)), overruled on other grounds, *Felzer v. Andreas*, 134 F.3d 873,

4  875 (6th Cir. 1998). "[T]he district court must assess whether a class exists,"

5  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003), *i.e.*, whether the lawsuit

6  qualifies as a class action under Rule 23. *See, e.g., Hanlon v. Chrysler Corp.*, 150

7  F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with

8  requirements of Rule 23(a) and Rule 23(b)(3)).

9      At the second stage of the approval process, after class members have had an

10 opportunity to object to the settlement, the court makes a final determination

11 whether the settlement is "fair, reasonable and adequate" under Rule 23(e).[1]

12          **A.   Plaintiff's Claims Merit Class Action Treatment**

13     In assessing class certification, the question "is not whether . . . plaintiffs

14 have stated a cause of action or will prevail on the merits, but rather whether the

15 requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin* (1974) 417 U.S.

16 156, 178, 94 S. Ct. 2140, 2153 (1974) This action meets the requirements for

17 certification under Rule 23(a) and Rule 23(b)(3) for purposes of the proposed

18 settlement, without consideration of the manageability requirement of Rule 23(b)(3)

19 since there will be no trial of this action.

20          **1.   Numerosity**

21     Under Rule 23(a) (1), a class action may be maintained where "the class is so

22 numerous that joinder of all members is impracticable." In this action, the Class is

23 composed of 2214 current and former employees. (Dec. of Moss, Par. 4) Under

24

25 ─────────────

26 [1]  *Armstrong*, 616 F.2d at 314; *see Staton*, 327 F.3d at 952. *See also* Rule 23(e)(C)(1) of the
   Federal Rules of Civil Procedures, which provides that a court may finally approve a

27 settlement of a class action if it finds after a hearing that the settlement is "fair, reasonable,
   and adequate" and Rule 23(e)(C)(4), which provides that any class member may object to a

28 proposed settlement.

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

7

1   the circumstances of this case, the individual joinder of all class members is

2   impracticable.

### 2.    Commonality

4       Rule 23(a)(2) requires that there be "questions of law or fact common to the

5   class." This commonality requirement is "construed permissively." *Hanlon*, 150

6   F.3d at 1019  Plaintiffs need not demonstrate that all questions of fact and law are

7   common.  "The existence of shared legal issues with divergent factual predicates is

8   sufficient." *Id.*

9       Here, Plaintiff asserts that Class Members share common legal questions

10   arising under California *Labor Code* §§ 1194, 1194.2, 1197, 226, 226.7 and 512, as

11   well as related provisions of California's applicable Industrial Welfare Commission

12   Wage Orders, and California *Business & Professions Code* § 17200 *et seq*.

13   Specifically, Plaintiff asserts that Class Members have shared a common interest in

14   determining whether Defendant had a timekeeping system that did not capture all

15   work time; whether Defendant had a policy of not paying Class Members for all

16   time worked; whether Defendant failed to pay Class Members for all hours worked;

17   whether Defendant, at times, failed to pay Class Members properly in connection

18   with *Labor Code* § 226.7; whether Defendant violated the itemized wage statement

19   provisions of *Labor Code* § 226 by allegedly not providing accurate information as

20   to hours and wages; and whether Defendant's policies and practices violated

21   California Business & Professions Code §§ 17200 *et seq*.

22       Under these circumstances, certification of the Class for settlement purposes

23   is appropriate.

### 3.    Typicality

25       Rule 23(a) (3) requires that the representative plaintiff have claims "typical

26   of the claims . . . of the class."  Representative claims can be are typical "if they are

27   reasonably co-extensive with those of absent class members; they need not be

28   identical." *Id.* at 1020. "It is enough if their situations share a common issue of

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

8

1 | law or fact and are sufficiently parallel to insure a vigorous and full presentation of
2 | all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917
3 | F.2d 1171, 1175 (9th Cir. 1990)  Typicality refers to the "nature of the claim . . . of
4 | the class representative, and not to the specific facts from which it arose." *Hanon v.*
5 | *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) The typicality requirement
6 | is satisfied here for purposes of the proposed settlement. (Dec. of Moss, Par. 21)

### 4.  Adequate Representation

8 | Rule 23(a) (4) requires that "the representative parties will fairly and
9 | adequately protect the interests of the class."  The assessment of adequate
10 | representation includes consideration of whether the named plaintiff and his
11 | counsel "have any conflicts of interest with other class members," and whether the
12 | named plaintiff and his counsel will "prosecute the action vigorously on behalf of
13 | the class." *Hanlon*, 150 F.3d at 1020  Plaintiff asserts that adequacy may be
14 | established by the mere fact that counsel are experienced practitioners.

15 | Plaintiff and his counsel are not aware of any conflicts of interest between
16 | Plaintiff and the Class Members or of conflicts with Plaintiff's counsel. (Dec. of
17 | Moss, Par. 21)

18 | Plaintiff's counsel has substantial class action experience and can adequately
19 | represent the Class for purposes of this settlement.  They have been appointed class
20 | counsel in many wage and hour class actions against major employers. (Moss
21 | Decl., Par. 10)  Mr. Moss has been lead or co-lead counsel in dozens of class
22 | actions and FLSA representative actions.  He has worked as an employment/labor
23 | lawyer since 1977. (Moss Decl., Par. 10).  He has handled numerous contested
24 | certification motions, appeals on employment law matters, and has argued wage
25 | and hour matters in the California Supreme Court. (Moss Decl., Par. 10)

### 5.  Predominance of Common Questions

27 | The predominance inquiry considers whether the class is "sufficiently
28 | cohesive to warrant adjudication by representation." *Local Joint Executive Bd. of*

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

9

1   *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th

2   Cir. 2001).  Central to predominance is "the notion that the adjudication of common

3   issues will help achieve judicial economy." *Zinser v. Accufix Research Institute,*

4   *Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).  "When common questions represent a

5   significant aspect of the case and they can be resolved for all members of the class

6   in a single adjudication, there is clear justification for handling the dispute on a

7   representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022

8       Plaintiff asserts that common issues that predominate over individual issues

9   in this litigation include : 1) whether Defendant had a policy and practice of

10   rounding in a manner that caused Class Members not to be paid for  "work" prior to

11   and after their paid work time; 2) whether Defendant has a *de minimis* defense

12   under state or federal law; 3) whether Defendant had a policy and practice of

13   providing Class Members with itemized wage statements that were inaccurate in

14   violation of *Labor Code* Section 226.4) whether Defendant's rounding policy and

15   practice, at times, caused employees not to get paid properly in connection with

16   meal  periods; and 5) whether Defendant's donning and doffing policies and

17   practices violated California law.

18       **6.    Superiority**

19       In deciding whether to certify a class for settlement purposes, a court

20   considers: (a) class members' interests in individually controlling the prosecution or

21   defense of separate actions; (b) the extent and nature of any litigation concerning

22   the controversy already commenced by or against members of the class; and (c) the

23   desirability or undesirability of concentrating the litigation of the claims in the

24   particular forum.[2]  Some courts have found that the third Rule 23(b)(3) factor is

25   _____

26   [2]   Rule 23(b)(3)(A)-(C). When a court reviews a class action settlement, it does *not* consider
     Rule 23(b)(3)(D), the fourth factor, regarding difficulties of managing a class action.

27   *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248 (1997) (in
     deciding whether to certify a class for settlement purposes, a district court "need not inquire

28   whether the case, if tried, would present intractable management problems").

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

10

1  "conceptually irrelevant in the context of a settlement." *See Strube v. American*
2  *Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005). "With the
3  settlement in hand, the desirability of concentrating the litigation in one forum is
4  obvious." *Elkins v. Equitable Life Ins. of Iowa*, No. 96-296-Civ-T-17B, 1998 WL
5  133747, at *19 (M.D. Fla. Jan. 27, 1998)

6       To determine whether the superiority requirements of Rule 23(b) (3) are
7  satisfied, a court compares a class action with alternative methods for adjudicating
8  the parties' claims.  Lack of a viable alternative to a class action necessarily means
9  that it satisfies the superiority requirement. *See Valentino v. Carter-Wallace*, 97
10  F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for
11  managing litigation if no realistic alternative exists").  "[I]f a comparable evaluation
12  of other procedures reveals no other realistic possibilities, [the] superiority portion
13  of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at
14  1163  In *Culinary/ Bartender Trust Fund*, the Ninth Circuit held that the "case
15  involve[d] multiple claims for relatively small sums" and that the class action
16  would "'permit the plaintiffs to pool claims which would be uneconomical to
17  litigate individually.'" *Id.* at 1163

18       The class settlement satisfies the superiority requirement here as it will allow
19  Class Members "to pool [their individual] claims which would be uneconomical to
20  litigate individually."

21       The factors articulated in Rule 23(b)(3)(A), (B) and (C) also favor class
22  certification for settlement purposes here.  First, Plaintiff and his counsel assert
23  there is no evidence that any Class Members have an interest in individually
24  controlling the prosecution of separate actions, and relatively small sums are
25  involved for any one Class Member.  Any Class Member who wants to pursue a
26  separate action can opt-out.

27       Also, it is desirable to concentrate the issues in this forum for purposes of
28  this settlement, as the class is comprised of employees who worked for Defendant

1 | in California and he parties have reached a settlement as memorialized in the
2 | Settlement Agreement.

3 | **B.    The Settlement is Fair, Reasonable and Adequate**

4 | No single criterion determines whether a class action settlement meets the
5 | requirements of Rule 23(e). The Ninth Circuit has directed district courts to
6 | consider a variety of factors without providing an "exhaustive list" or suggesting
7 | which factors are most important. *See, Staton*, 327 F.3d at 959 "The relative
8 | degree of importance to be attached to any particular factor will depend upon and
9 | be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and
10 | the unique facts and circumstances presented by each individual case." *Officers for*
11 | *Justice v. Civil Service Comm'n of City and County of S.F.*, 688 F.2d 615, 625 (9th
12 | Cir. 1982)

13 | Due to the impossibility of predicting any litigation result with certainty, a
14 | district court's evaluation of a settlement essentially amounts to "'an amalgam of
15 | delicate balancing, gross approximations and rough justice.'" *Id.* at 625  The
16 | ultimate touchstone, however, is whether "class counsel adequately pursued the
17 | interests of the class as a whole." *Staton*, 327 F.3d at 961

18 | As the Ninth Circuit explained in *Officers for Justice*, the district court's role
19 | in evaluating a class action settlement is therefore tailored to meet that narrow
20 | objective. *Officers for Justice*, 688 F.2d at 625. Review under Rule 23(e) "must be
21 | limited to the extent necessary to reach a reasoned judgment that the agreement is
22 | not the product of fraud or overreaching by, or collusion between, the negotiating
23 | parties." *Id.* Accordingly, the Ninth Circuit will not reverse a district court's
24 | approval of a class action settlement "unless the fees and relief provisions clearly
25 | suggest the possibility that class interests gave way to self interest." *Staton*, 327
26 | F.3d at 961

27 |
28 |

1    There is a presumption that the negotiations were conducted in good faith.[3]

2    Courts do not substitute their judgment for that of the proponents, particularly

3    where, as here, settlement has been reached with the participation of experienced

4    counsel familiar with the litigation.[4]  The fact that settlement results from arms-

5    length negotiations following "relevant discovery" creates "a presumption that the

6    agreement is fair."[5]

7        Here, the Parties reached a non-collusive settlement during an arms-length

8    mediation, before Mark Rudy, an experienced and well-regarded mediator of

9    complex wage and hour class actions.  The parties agreed to mediation after

10   conducting a substantial and more than sufficient exchange of information and

11   documents to enable counsel to form informed opinions about the value of the case.

12   Obtaining class certification and establishing liability posed significant hurdles for

13   the class that justified the settlement.  The Settlement Agreement falls well within

14   the range of reasonable outcomes and merits approval under Rule 23(e).

15            **1.    Benefits of Settlement**

16       The Settlement Agreement is a compromise of strongly disputed claims.

17   Plaintiff and Class Counsel believe the claims have merit and that evidence

18   developed to date supports the claims.  Defendant denies the claims and contends

19   that its practices were legal, and that it could defeat certification, absent settlement,

20

21

22   [3]  Newberg, §11.51, *In re Chicken Antitrust Litig.*, 560 F.Supp. 957, 962 (N.D. Ga.. 1980);

23   *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank and Trust Co. of Chi.*, 834 F.2d 677, 682 (7th Cir. 1987).

24   [4]  *Hammon v. Barry*, 752 F.Supp 1087 (D.D.C. 1990); *Steinberg v. Carey*, 470 F.Supp. 471

25   (S.D.N.Y. 1979*); Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 79 F.R.D. 571 (E.D. Pa. 1978).

26   [5]  *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ *et al.*, 1997 WL 450064, at *5 (N.D.

27   Cal. July 18, 1997); *See In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1174 (S.D.

28   Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strengths and weaknesses of their cases).

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

13

1   if Plaintiff moved for certification pursuant to a contested motion with a fully

2   developed factual record.

3       The parties recognize, however, the expense and length of the type of

4   continued proceedings necessary to prosecute and defend the litigation through trial

5   and possible appeals.  The parties have taken into account the uncertain outcome

6   and risk of any litigation, especially in putative class actions.  Plaintiff and Class

7   Counsel are mindful of the difficulties and delays inherent in such litigation, and

8   that they must establish and overcome potential defenses to the claims asserted and

9   their burden under Rule 23 in certifying a class.  An extensive investigation,

10  extensive research and a comprehensive information exchange, as well as the

11  mediation, clarified issues in the litigation that led to appropriate risk assessment.

12      Moreover, with respect to the meal period claims, which allegedly derive

13  from rounding practices, there have been several opinions that could be interpreted

14  to be adverse to the Class Members as to  certification and liability: *Brinker*

15  *Restaurant Corp. v. Superior Court*, 165 Cal. App. 4th 25, 80 Cal. Rptr. 3d 781

16  (2008), review granted by the California Supreme Court, thus not citeable on its

17  merits; *Brinkley v. Public Storage, Inc.*, 167 Cal. App. 4th 1278, 84 Cal. Rptr. 3d

18  873 (2008), review granted; *Martin v. FedEx Ground Package System, Inc.*, No. C

19  06-6883 VRW, 2008 WL 5478576, (N.D. Cal. Dec 31, 2008); *White v. Starbucks*

20  *Corp.*, 497 F. Supp. 2d 1080, 1081 (N.D. Cal. 2007); *Brown v. Federal Express*

21  *Corp.* 2008 WL 906517 (C.D. Cal. 2008).  Federal court decisions on contested

22  motions for class certification in rounding and other unpaid work time contexts

23  similarly made success on a contested certification motion far from a certainty

24  notwithstanding Class Counsel's strongly held belief that certification would be

25  appropriate.

26

27

28

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

14

1    The settlement confers substantial benefits upon the Settlement Class in
2  return for releasing their claims against Defendant and related entities.[6]  Plaintiff
3  and Class Counsel have concluded that the settlement is in the best interests of
4  Plaintiff and the Settlement Class.  Defendant determined that it is desirable and
5  beneficial that the litigation be settled in the manner and upon the terms set forth in
6  the Settlement Agreement.

7          **2.    Monetary Terms are Fair and Reasonable**

8    Plaintiff's counsel believes this is a very good settlement.  Plaintiff asserts
9  that typically, when Class Members did "work" off the clock, it was only for a few
10  minutes at a time. Presently, the Settlement Payment is One Million One Hundred
11  Thousand Dollars ($1,100,000).  After deducting proposed attorneys' fees of Two
12  Hundred Seventy Five Thousand Dollars  ($275,000), maximum litigation expenses
13  of Eight Thousand Dollars ($8,000), the enhancement/service award for Plaintiff  of
14  Five Thousand Dollars ($5,000), the claims administration expenses ($32,000, and
15  the payment to the LWDA ($7500.00), approximately $777,500 will be available
16  for distribution to approximately 2214 Class Members.  If every single Class
17  Member submits a timely Claim Form, each eligible Class Member will receive, on
18  average, $351.17.  Given the terms of the Settlement Agreement, if less than 40%
19  of the available money payable to Class Members who timely filed claims, is
20  claimed, the amount each eligible Class Member who timely filed a claim will
21  receive, increases.

22    The Claims Administrator will divide the Net QSF among the eligible Class
23  Members who timely file claims on a *pro rata* basis.  The Claims Administrator
24  will allocate the individual Claim amounts by comparing the eligible Class
25  Members' work weeks during the Class Period as compared to the total work weeks

26

27  [6]  The Release as to Class Members is limited to "Released Claims," as defined in the
28  Settlement Agreement.

1  of all eligible Class Members.  Thus, an eligible Class Member whose earnings are

2  one-half of one percent (0.5%) of the total will receive a minimum of one-half of

3  one percent (0.5%) of the Net QSF.

### 3.  Attorneys' Fees and Expenses Are Fair And Reasonable

#### a.  Plaintiff's Counsel to Seek No More than $275,000 in Fees and No More than $8,000 in Expenses

7  The Ninth Circuit has directed that, to determine what constitutes a fair and

8  reasonable percentage of the settlement for purposes of calculating common fund

9  attorneys' fees, the courts should use a "benchmark" percentage of 25% of the total

10  fund. *Paul, Johnson, Alston & Hunt v. Graulty* 886 F.2d 268, 272 (9th Cir. 1989);

11  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican*

12  *Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

13  With this benchmark in mind, Plaintiff's counsel agreed to accept no more

14  than $275,00, which is 25% of the Settlement Payment for attorneys' fees and no

15  more than $8,000 for expenses.  Given the significant work done and the risks

16  associated with asserting the claims in this action, Class Counsel asserts that this is

17  fair and reasonable.

#### b.  Lodestar Method Not Required and Unnecessary

19  The Ninth Circuit has recognized that, while a lodestar method can be used

20  as a cross check on the reasonableness of fees calculated on a percentage of

21  recovery method, *it is not required*. *Vizcaino*, 290 F.3d at 1050, n.5.  Regardless,

22  as part of the final approval proceedings, Plaintiff will provide the Court with

23  information needed to calculate attorney's fees under the lodestar method.

### 4.  The Service Award (Enhancement) to Plaintiff Is Fair & Reasonable

25  Service fees, also called incentive awards and enhancements, compensate

26  named plaintiffs for the time and effort expended on behalf of the class, and for

27  exposing themselves to the significant risks of litigation.  "Courts routinely approve

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

16

1   incentive awards to compensate named plaintiffs for the services they provided and

2   the risks they incurred during the course of the class action litigation." *Ingram v.*

3   *The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001). In *Coca-Cola*, for

4   example, the court approved enhancements of $300,000 to each named plaintiff in

5   recognition of the services they provided to the class by responding to discovery,

6   participating in the mediation process and taking the risk of stepping forward on

7   behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl.*

8   *Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000

9   participation award).

10      Plaintiff seeks a service award/enhancement of $5,000. Compared to the

11   Settlement Payment of $1,100,000, and given the time and effort that Plaintiff put

12   into this case, Plaintiff asserts that at least $5,000 is appropriate. (Moss Decl., Pars.

13   23-24) Plaintiff assisted counsel with document review and preparation for the

14   mediation and attended and assisted at the mediation. (Moss Decl., Pars. 23-24)

15   With these facts in mind, Plaintiff asserts that the $5,000 service

16   award/enhancement is reasonable and that it will result in only a nominal reduction

17   of each Class Member's share of the settlement.

18           **5.**    **The Class Notice**

19      Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), a

20   court must direct to class members the "best notice practicable" under the

21   circumstances. Rule 23(c) (2) (B) does not require "actual notice" or that a notice

22   be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)

23   Notice need only be "reasonably calculated, under all the circumstances, to apprise

24   interested parties of the pendency of the action and afford them an opportunity to

25   present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

26   306, 314, 70 S. Ct. 652, 657 (1950)

27      The Federal Judicial Center has published a form for class notice. The

28   proposed notice here (Exhibit 1 to the Settlement Agreement) utilizes this form as a

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND SETTING FINAL FAIRNESS HEARING

17

1   framework.  The notice provides adequate, plain notice about the terms of the

2   Settlement Agreement.  The Notice also provides plain instructions on how Class

3   Members may submit a claim and opt out of the settlement, and provisions for

4   objecting to the settlement, how to obtain a payment, and other pertinent

5   information.  Using an independent, third-party Claims Administrator, notice will

6   be given through first class mail to the Class Members, whose last known addresses

7   are known to Defendant.  The Claims Administrator will skip trace returned mail.

8   A reminder post-card shall be sent to those Class Members as well.

9   **V.      THE COURT SHOULD SCHEDULE A FAIRNESS HEARING**

10          The last step in the settlement approval process is the fairness hearing, where

11  members of the Class who timely submit objections to the Settlement Agreement

12  may be heard, and the court makes a final determination about the propriety of

13  settlement.  Based on the timetables for giving notice, submitting claims and

14  making objections to the Settlement Agreement, Plaintiff requests that the fairness

15  hearing in this case be scheduled on a date approximately 150 days after

16  preliminary approval (if granted).

17  **VI.    CONCLUSION**

18          Plaintiff negotiated a settlement that he believes provides a significant

19  amount of money to Class Members, especially in these extraordinary economic

20  times, and is fair and reasonable, especially given the claims and the potential

21  defenses to them.  The Court should grant preliminary approval of the settlement

22   and adopt the proposed order submitted herewith.

23

24  Dated:  November 12, 2010                    SPIRO MOSS LLP

25                                                             By: */S/ Dennis F. Moss*
                                                                    DENNIS F. MOSS
26                                                             Attorneys for Plaintiff

27

28